UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARLA ECHEVERRY | CIVIL ACTION |
| VERSUS | NO. 17-6494 |
| PHILLIP PADGETT, ET AL. | SECTION "L" (3) |

## ORDER & REASONS

Upon reviewing the documents filed under seal by Defendants and the Rule 30(b)(6) deposition testimony of Patrick Maher, the Court believes it is appropriate to revisit the issue of sanctions and now rules as follows.

I.   BACKGROUND

This case arises out of a February 16, 2017 incident at the intersection of South Peters Street and Poydras Street in downtown New Orleans, Louisiana. R. Doc. 84 at 3. Defendant Jazz Casino Company, LLC d/b/a Harrah's New Orleans Casino ("Harrah's") hired an independent contractor, Alabama Wildlife Removal, LLC ("AWR") to remove birds from palm trees outside of its casino. R. Doc. 84 at 3. This job required the use of a manlift. As the manlift was moving from one group of palm trees on South Peters to another group of palm trees on Poydras, it allegedly struck Plaintiff Carla Echeverry, a pedestrian waiting at the crosswalk of the intersection. R. Doc. 49 at ¶ 9. As a result, Plaintiff allegedly sustained a comminuted fracture of her lower right leg and ankle and was allegedly forced to drop out of the University of New Orleans, where she was only months away from graduating with a Bachelor of Science. R. Doc. 84 at 3.

1

Plaintiff sued Harrah's; AWR; Richard Padgett, the owner of AWR ("Padgett"); and Richard Tyler, the AWR employee who was operating the manlift ("Tyler"). R. Doc. 84 at 4. AWR, Padgett, and Tyler failed to appear in this lawsuit, and the Court entered a preliminary default against them. R. Doc. 42. Plaintiff alleges that Harrah's was negligent in the following, among others: failing to properly supervise AWR or provide sufficient barricades and equipment; hiring a contractor which it knew or should have known was incompetent; failing to investigate and vet its contractors; and hiring a contractor which it knew or should have known was uninsured. R. Doc. 49 at ¶ 14.

The parties dispute whether any Harrah's employees were present when the accident occurred. Harrah's contends that one of its employees, David Stuart ("Stuart") was "present at times . . . to make sure that AWR followed [Harrah's] safety policies when operating the manlift, including the use of barricades . . . and the use of a flagman when the manlift was moved from one location to another." R. Doc. 84 at 6. But neither Stuart nor any other Harrah's employee supervised AWR's work or were allegedly near the intersection when the accident occurred. R. Doc. 84 at 6.

According to Harrah's, video surveillance footage of the accident shows Chris Moore, an AWR employee, acting as a flagman for the manlift. R. Doc. 84 at 5. Moore allegedly walked past Plaintiff and into Poydras, "getting into position to stop traffic on Poydras Street so the manlift can move into the street and down the block towards additional palm trees." R. Doc. 84 at 5. Moore allegedly did not warn Plaintiff that the manlift was approaching and allegedly did not warn Tyler, the operator, that Plaintiff was in its path. R. Doc. 84 at 6. Accordingly, Harrah's contends that the accident was caused by Moore's failure to warn; Tyler's failure to make sure the path was clear; and Plaintiff's own negligence in failing to abide by a sign requesting pedestrians to cross the street

to avoid the area and in failing to hear an alarm that sounded when the manlift was in motion. R. Doc. 84 at 6.

Finally, Harrah's maintains that there is no credible evidence to support Plaintiff's allegation that it negligently hired AWR. R. Doc. 84 at 7. Harrah's claims that Stuart checked several references, and that AWR must have provided a certificate of insurance for it to be approved as a vendor and allowed to perform this job. R. Doc. 84 at 7.

On April 23, 2019, less than one week before this case was set to be tried to a jury, Harrah's produced numerous, never-before-seen documents that were allegedly crucial to Plaintiff's case. R. Doc. 112-1 at 1. At the same time, Harrah's indicated that there were other documents but did not produce them, citing privilege. R. Doc. 112-1 at 1. Plaintiff requested sanctions for this late production. R. Doc. 112-1 at 1. Instead, the Court ordered a short continuance of the trial to allow Plaintiff to do the following: conduct discovery about the new documents which were produced; depose witnesses identified in those documents; and conduct discovery to determine if Harrah's failure to produce the new documents was "substantially justified" as required to avoid sanctions under Rule 37(c)(1) of the Federal Rules of Civil Procedure. R. Doc. 112-1 at 1. The Court also ordered the Defendants to file a privilege log and file under seal, for the Court's in camera review, the documents which the Defendants claimed are privileged.

## II.     PRESENT ISSUE

On May 22, 2019, Plaintiff filed a Second and Amended Motion for Sanctions. R. Doc. 112. At the June 5, 2019 status conference, the Court denied the Motion. R. Doc. 130. On June 10, 2019 Defendants filed the privilege log and the retained documents for the court's review. R. Doc. 129. Based on the content of these documents, for which Defendants claim attorney work product privilege, the Court decided to revisit the issue of sanctions in this matter.

## III. LAW AND ANALYSIS

The work product privilege applies to documents "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). "A party asserting work-product protection must establish the following elements: first, the materials must be documents or tangible things; second, the party's primary motivating purpose behind creating the document must have been anticipation of litigation and to aid in possible future litigation; third, the materials must have been prepared by or for a party's representative . . . ." *Stoeffels v. SBC Commc'ns., Inc.*, 263 F.R.D. 406, 417 (W.D. Tex. 2009). Further, the Fifth Circuit has concluded that "the privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (citing *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982)). Here, it is unclear whether the documents in question can be classified as attorney work product, as they are a series of emails from an attorney seeking information. It is not clear that the emails themselves have a "primary motivating purpose" of aiding in litigation.

Even if work product privilege were to apply, however, the materials may still be discoverable by Plaintiff if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). Moreover, the Supreme Court has explained that not "all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Here, the underlying facts that are mentioned in the emails that Defendant seeks to shield are not

privileged, and production of those facts would be essential to the preparation of Plaintiff's case. As such, the underlying facts may be discoverable.

The Fifth Circuit has recognized opinion work product as a distinct category and noted that "some courts have provided an almost absolute protection for such materials." *In re Int'l Sys. and Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1240 (5th Cir. 1982). The Fourth and Eighth Circuits have also held that "opinion work product is entitled to substantially greater protection than ordinary work product." *In re Doe*, 662 F.2d 1073, 1080 (4th Cir. 1981) (quoting *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977)). Opinion work product is described as the "mental impressions, conclusions, opinions, or legal theories of lawyers or other representative[s] of the party that is in litigation." *In re Hardwood P-G, Inc.*, 403 B.R. 445, 463 (Bankr. W.D. Tex. 2009). If the materials in question are ordinary work product, however, then a court may "compel discovery if the party seeking the materials demonstrates a substantial need for the information and an inability to obtain the substantial equivalent without undue hardship." *S.E.C. v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006) (citing *In re Int'l Systems & Controls Corp. Sec. Litig.,* 693 F.2d at 1240). Here, the emails do not constitute opinion work product, as Defendants' attorney does not provide any legal advice or theories, nor any mental impressions or opinions. Accordingly, Plaintiff should be able to access the emails by showing substantial need and an inability to secure the substantial equivalent of the emails without undue hardship.

Moreover, some courts have found that substantial need exists by emphasizing the importance of the documents in question. *S.E.C. v. Brady*, 238 F.R.D. at 443 (citing *In re Int'l Systems & Controls Corp. Sec. Litig.,* 693 F.2d at 1241). For example, if material facts known by one party can only be obtained by the other party through privileged documents, then that may qualify as a "substantial need" for the documents. *S.E.C. v. Brady*, 238 F.R.D. at 443. Here, if

5

material facts known by Defendants can only be obtained by Plaintiff through the emails that Defendants are attempting to shield, then it may suffice for the Plaintiff to show a "substantial need" for the emails.

Further, in a Middle District of North Carolina case, the court found that "[t]he relevance and importance of a document, for purposes of the substantial need exception to work product protection, can be established by showing the document is necessary for impeachment purposes or to prevent fraud or misuse of the Court." *Suggs v. Whitaker*, 152 F.R.D. 501, 507–08 (M.D.N.C. 1993). Here, Plaintiff deposed Defendant company representative in a Rule 30(b)(6) deposition, which requires that "[t]he persons designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). During the deposition of Defendant company representative, he indicated that he, speaking for the company, did not know the answer to a particular question. However, in the emails that Defendants produced under seal, it is clear that the company was aware of the answer to that question. This discrepancy between the representative's statement and the emails in question reveal an inconsistency that, at the very least, constitutes misuse of the Court. The Court thus concludes that work product privilege has been waived.

The Court now returns to the question of whether sanctions are appropriate. Courts have the inherent power to sanction litigants for a wide range of abuses during litigation. *Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 494 (N.D. Tex. 2016) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 46 (1991). But courts must exercise their inherent powers with restraint and discretion. *Chambers*, 501 U.S. at 44. According to the Fifth Circuit, "the district court has broad discretion to fashion an appropriate sanction . . . ." *Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 535 (5th Cir. 1992). These sanctions may include monetary and injunction

sanctions, and potentially even dismissal. *Orchestratehr, Inc.*, 178 F. Supp. 3d at 498. Still, "[c]ourts have a duty to impose the least severe sanction that is sufficient to deter future conduct." *Id.* (citing *Mendoza v. Lynaugh,* 989 F.2d 191, 196 (5th Cir. 1993); Fed. R. Civ. P. 11(c)(4)). Here, based on the inconsistency of the Rule 30(b)(6) testimony with the information contained in Defendants' emails, the Court concludes that it is in the interest of justice for sanctions to be imposed against Defendants. The Court will impose the least severe sanction that is sufficient to deter similar conduct in the future.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendants shall receive the following sanction: Defendants shall deliver Plaintiff its privilege log and associated documents that were filed under seal for in camera review.

**IT IS FURTHER ORDERED** that Defendants deliver the privilege log and associated documents immediately and prior to the start of depositions.

New Orleans, Louisiana, this 19th day of June, 2019.

ELDON E. FALLON
U.S. DISTRICT COURT JUDGE