**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CARLA ECHEVERRY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-6494** |
| **PHILLIP PADGETT, ET AL.** | **SECTION "L" (3)** |

## ORDER & REASONS

Before the Court is Defendant Jazz Casino Company, LLC's Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b) or, Alternatively, a New Trial under Federal Rule of Civil Procedure 59(a)(1)(A), or a Remittitur. R. Doc. 241. The motion is opposed. R. Doc. 249. Defendant filed a reply. R. Doc. 255. The Court now rules as follows.

**I.     BACKGROUND**

**A.  Factual History**

This case arose out of a February 16, 2017 incident that occurred at the intersection of South Peters Street and Poydras Street in downtown New Orleans, Louisiana. R. Doc. 84 at 3. Defendant Jazz Casino Company, LLC d/b/a Harrah's New Orleans Casino ("JCC") hired an independent contractor, Alabama Wildlife Removal, LLC ("AWR") to remove birds from palm trees outside of its casino. R. Doc. 84 at 3. This job required the use of a manlift. As the manlift was moving from one group of palm trees on South Peters Street to another group of palm trees on Poydras Street, it struck Plaintiff Carla Echeverry, a pedestrian waiting at the crosswalk of the intersection. R. Doc. 49 at ¶ 9. As a result, Plaintiff sustained a comminuted fracture of her lower right leg and ankle. R. Doc. 84 at 3. Plaintiff sued JCC; AWR; Richard Padgett, the owner of AWR ("Padgett"); and Richard Tyler, the AWR employee who was operating the manlift ("Tyler"). R. Doc. 84 at 4. AWR, Padgett, and Tyler failed to appear in this lawsuit, and the Court entered a

1

preliminary default against them. R. Doc. 42. Plaintiff alleged that JCC was negligent for the following reasons, among others: failing to properly supervise AWR or provide sufficient barricades and equipment; hiring a contractor which it knew or should have known was incompetent; failing to investigate and vet its contractors; and hiring a contractor which it knew or should have known was uninsured. R. Doc. 49 at ¶ 14.

JCC denied liability in this case and argued video surveillance footage of the accident showed Chris Moore, an AWR employee, acting as a flagman for the manlift. R. Doc. 158 at 7. Moore allegedly walked past Plaintiff, who was standing on the sidewalk at the corner of Poydras and South Peters Streets, and into Poydras Street, "getting into position to stop traffic on Poydras Street so the manlift can move into the street and down the block towards additional palm trees." R. Doc. 158 at 7–8. Moore allegedly did not warn either Plaintiff that the manlift was approaching or Tyler, the manlift operator, that Plaintiff was in its path. R. Doc. 158 at 8. Accordingly, JCC asserted the accident was caused by Moore's failure to warn; Tyler's failure to make sure the path was clear; and Plaintiff's own negligence in failing to abide by a sign requesting pedestrians to cross the street to avoid the area and in failing to hear an alarm that sounded when the manlift was in motion. R. Doc. 158 at 8. Finally, JCC averred there was no credible evidence to support Plaintiff's allegation that it negligently hired AWR. R. Doc. 158 at 9. JCC claimed its employee checked several references before hiring AWR, and that contractors must provide a valid certificate of insurance before they can be approved as vendors for JCC. R. Doc. 158 at 9.

### B. Trial and Jury Verdict

A jury trial for this case commenced on August 5, 2019. As part of Plaintiff's case-in-chief, she called Kerry Hoppe, a former employee of JCC; Rudolph Leonard, who provided some treatment to Plaintiff on the day of the accident at the site of the accident; David Stuart, a former

JCC employee who negotiated the contract with AWR in his capacity as the Director of Business Process Improvement, via video deposition; Garet Smitherman, Vice President of Operations of the Better Business Bureau of Central and South Alabama, via video deposition; Dr. Robert Zura, an expert in the field of orthopedic surgery and orthopedic trauma; Russell Deaver, a current employee of JCC; Jonathan Gardner, an employee of JCC who familiar with the company's sourcing operation, via video deposition; Pat Maher, a current employee of JCC and the corporate representative; Richard Tyler, a former employee of AWR and the manlift operator in this incident, via video deposition; Victoria Echeverry, Plaintiff's mother; Plaintiff herself; and Cara Hall, current employee of Caesars Entertainment, the parent company of JCC.

After Plaintiff rested, JCC presented its case, calling Eric Miller, an employee of JCC who interacted with Phillip Padgett and AWR concerning the certificate of insurance, via video deposition; and Edward Carrick, an expert in the field of accident investigation and workplace safety. After JCC rested, the jury was excused. Out of the presence of the jury, JCC's Motion for Directed Verdict on Negligent Hiring and JCC's Rule 50 Motion for Judgment as a Matter of Law regarding negligent supervision were heard and denied by the Court.

Both sides gave closing arguments in the morning of August 8, 2019, and the jury began deliberation at 11:10 a.m. The jury reached a verdict and returned from deliberations at 1:34 p.m. The Court took the jury's verdict at 1:44 p.m., which was as follows:

1. JCC was negligent, and JCC negligence was a legal cause of Plaintiff's injuries.

2. AWR was negligent, and AWR's negligence was a legal cause of Plaintiff's injuries.

3. Plaintiff was 1 percent negligent, but this negligence was not a legal cause of her injuries.

4. JCC was 49 percent at fault for Plaintiff's injuries.

5.  AWR was 50 percent at fault for Plaintiff's injuries.

6.  Plaintiff is entitled to recover a total sum of $1,262,000.00, with the breakdown as follows:
    -   $150,000 for past pain, suffering, and mental anguish;
    -   $1,000,000 for future pain, suffering, mental anguish, disability, scarring, and disfigurement;
    -   $30,000 for past, present, and future loss of enjoyment of life;
    -   $51,000 for past medical expenses;
    -   $26,000 for past lost wages; and
    -   $5,000 for loss of college tuition.

*See* R. Doc. 207-1. Accordingly, Plaintiff is entitled to recover 49 percent of $1,262,000.00 from JCC, plus judicial interest and a percentage of court costs.

At JCC's request, the jury was polled, and each answered in the affirmative that this was indeed the respective juror's findings. The Court accepted the jury's verdict in whole. On August 21, 2019, the Court entered judgment in favor of Plaintiff against JCC for $618,380.00, for the 49 percent fault assigned to JCC, plus pre-judgment interest on this amount from judicial demand up to the date of judgment, post-judgment interest until paid, and costs allocated proportionate to the percent fault assigned.[1] Following JCC's Motion to Alter Judgment regarding two stipulations to past medical expenses and lost tuition expenses and calculation of post-judgment interest, R. Doc. 243, which was unopposed by Plaintiff, R. Doc. 250, the Court issued a Second Amended Judgment in favor of Plaintiff and against JCC for a total of $ $618,196.04, plus interest and the proportion of costs. R. Doc. 256.

## II.  PRESENT MOTION

On September 18, 2019, JCC filed the instant Motion for a Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b) or, Alternatively, a New Trial under Federal Rule of Civil Procedure 59(a)(1)(A), or a Remittitur, R. Doc. 241. JCC argues for a judgment as a

---

[1] Due to clerical error, the Court entered an amended judgment on August 23, 2019. *See* R. Doc. 229.

matter of law, or alternatively, a new trial, or a remittitur on three grounds. First, JCC challenges the jury's verdict finding JCC negligent, arguing that (1) JCC cannot be found negligent for the negligent acts of its independent contractor, AWR, under Louisiana law and (2) there was insufficient evidence to support Plaintiff's negligent hiring claim against JCC. R. Doc. 241-1 at 7, 11. Second, JCC challenges the jury's allocation of 49 percent of the fault to JCC, stating that even if there were a basis for the jury to find JCC negligent in causing Plaintiff's accident, the allocation of fault is "unsupportable by any rational consideration of the evidence" and does not comport with the factors established in *Watson v. State Farm & Casualty Insurance Co.*, 469 So.2d 967, 974 (La. 1985). R. Doc. 241-1 at 13. Finally, JCC challenges the jury awarding an "inordinately excessive $1,000,000 in future pain and suffering damages" to Plaintiff and contends that the Court should intervene and either grant a new trial or a remittitur. R. Doc. 241-1 at 17. Moreover, JCC argues the jury's excessive future pain and suffering award resulted from "Plaintiff's improper utilization of the Golden Rule, Unit of Time and Community Conscience arguments," which were "immensely prejudicial and improperly influenced the size of the jury's award." R. Doc. 241-1 at 24.

Plaintiff opposes JCC's motion. R. Doc. 249. Plaintiff argues JCC has not met the high burden required to set aside a jury verdict. R. Doc. 249 at 1. Specifically, Plaintiff contends that in response to JCC's first argument about negligence, the jury had five separate and independent grounds to find liability on the part of JCC and there is ample evidence to support any one of the following liability grounds:

1. JCC negligently hired a contractor which it knew or should have known was irresponsible;
2. JCC exercised operational control over the contractor's methods of operation;
3. JCC gave express or implied authorization to unsafe work practices;
4. JCC voluntarily assumed the duty to provide workplace safety and failed to perform that duty in a reasonable and prudent manner; and

5. JCC was independently negligent.

R. Doc. 249 at 4–5. In response to JCC's second argument about the jury's verdict on the allocation of fault, Plaintiff asserts the allocation is supported by the evidence and comports with the *Watson* apportionment factors. R. Doc. 249 at 16 (citing 469 So.2d 967, 975). Finally, in response to JCC's argument that the jury's $1,000,000 award for future pain, suffering, mental anguish, disability, scarring and disfigurement is excessive, Plaintiff argues the jury's verdict falls within 150 percent of the highest comparable award, so the Court should not overturn the jury award pursuant to the "maximum recovery rule." R. Doc. 249 at 17–18. Further, in response to JCC's complaints about Plaintiff counsel's allegedly improper arguments made during closing arguments, Plaintiff asserts "that the failure to object contemporaneously to allegedly improper statements during closing argument constitutes a waiver of any objection" and even if JCC had contemporaneously objected, the Court's jury instructions cured any potential prejudice that could have resulted from closing arguments. R. Doc. 249 at 24–25.

The Court will address each component of JCC arguments, as well as Plaintiff's responses, in turn.

III.    **LEGAL STANDARD**

   **A.  Rule 50(b) Motion for Judgment as a Matter of Law**

After the close of evidence, JCC filed a Federal Rule of Civil Procedure 50(a) Motion for Judgment as a Matter of Law on Plaintiff's negligent hiring claim, R. Doc. 201, and Plaintiff's negligent supervision claim, R. Doc. 202. The Court denied both motions. R. Doc. 203. Pursuant to Federal Rule of Civil Procedure 50(b), the movant may file a renewed motion for judgment as a matter of law within 28 days after entry of judgment. Fed. R. Civ. P. 50(b).  A Rule 50(b) motion in a jury trial case is a "challenge to the legal sufficiency of the evidence supporting the jury's

verdict." *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (quoting *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir.1995)). The Fifth Circuit has noted that in deciding a Rule 50(b) motion, the trial court "consider[s] all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Brown v. Bryan County, OK*, 219 F.3d 450, 456 (5th Cir. 2000). A judgment as a matter of law should only be granted when "the evidence at trial points so strongly and overwhelming in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Omnitech Int'l Inc. v. Clorox Co. Inc.*, 11 F.3d 1316, 1323 (5th Cir. 1994).

In *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, the Fifth Circuit discussed the standard for a Rule 50(b) motion after a jury verdict:

> [O]ur standard of review with respect to a jury verdict is especially deferential. A party is only entitled to judgment as a matter of law on an issue where no reasonable jury would have had a legally sufficient evidentiary basis to find otherwise. In evaluating the evidence, this court credit[s] the non-moving party's evidence and disregard[s] all evidence favorable to the moving party that the jury is not required to believe.

930 F.3d 647, 653 (5th Cir. 2019) (internal citations and quotations omitted). Thus, the Fifth Circuit has made it clear that when a jury has rendered its verdict, that verdict should not be disturbed absent strong, overwhelming evidence that shows a reasonable jury could not reach the opposite conclusion.

### B. Rule 59(a)(1)(A) Motion for a New Trial, or a Remittitur

In the alternative, JCC seeks a new trial pursuant to Federal Rule of Civil Procedure 59, which provides that "[t]he court may, on motion, grant a new trial on all or some of the issues— and to any party—as follows: after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

Under Rule 59, a new trial may be granted if "the verdict is against the weight of the

evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted); *see also McFadden v. Wal–Mart Stores*, No. 04-2547, 2006 WL 3087164, at *2 (E.D. La. Oct. 27, 2006). "A district court, however, should attempt to avoid substituting its judgment for the jury's considered verdict, so as to not violate the parties' Seventh Amendment rights." *Sorina v. Avis Rent–A–Car Sys., Inc.*, 1992 WL 40840, at *1 (E.D. La. Feb. 20, 1992); *see also Wright v. Nat'l Interstate Ins. Co.*, No. CV 16-16214, 2018 WL 2017567, at *3 (E.D. La. May 1, 2018), *aff'd,* 762 F. App'x 201 (5th Cir. 2019). If the jury's verdict is 'clearly within the universe of possible awards which are supported by the evidence,' then the district court should not grant a new trial. *Narcisse v. Illinois Cent. Gulf R. Co.*, 620 F.2d 544, 547 (5th Cir. 1980) (quoting *Bonura v. Sea Land Service, Inc.*, 505 F.2d 665, 670 (5th Cir. 1974)). A district court should not interfere with the factfinder's award of damages unless it is of an amount "as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial." *Munn v. Algee*, 924 F.2d 569, 578 (5th Cir. 1991).

Because the matter is before the Court on diversity jurisdiction, the new trial and remittitur standards of Louisiana law are applicable. *See Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012); *Foradori v. Harris*, 523 F.3d 477, 498 (5th Cir. 2008) ("The Supreme Court in *Gasperini* . . . held that, in an action based on state law but tried in federal court by reason of diversity of citizenship, a district court must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy. . . .").

Under Louisiana law, "[a] new trial shall be granted . . . [w]hen the verdict or judgment appears clearly contrary to the law and evidence." La. Code Civ. P. 1972(1). "The trial court's discretion in ruling on a motion for new trial is great, and its decision will not be disturbed on

appeal absent an abuse of that discretion." *Davis v. Wal–Mart Stores, Inc.*, 774 So. 2d 84, 93 (La. 2000). "Whether to grant a new trial requires a discretionary balancing of many factors." *Id.* (citing *Gibson v. Bossier City Gen. Hosp.*, 594 So. 2d 1332 (La. App. 2 Cir. 1991)). The Louisiana Supreme Court has explained the trial court's discretion as follows:

> The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution. . . . Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.

*Id.* (citing *Gibson*, 594 So. 2d 1332).

In making this determination, the trial court must balance the great deference given to the jury as the factfinder and the discretion bestowed upon the court in reviewing the motion, but the scales are "clearly tilted in favor of the survival of the jury's verdict." *Id.* at 93–94. The trial court's decision to grant or deny a motion for a new trial is to be made on a case-by-case basis. *Id.* at 94.

Furthermore, the Fifth Circuit has repeatedly held that "the decision to grant or deny a motion for new trial generally is within the sound discretion of the trial court and will not be disturbed unless there is an abuse of that discretion or a misapprehension of the law." *Dixon v. International Harvester Co.*, 754 F.2d 573, 586 (5th Cir. 1985); *see also Prytania Park Hotel, Ltd. v. General Star Indemnity Co.*, 179 F.3d 169, 175 (5th Cir. 1999); *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 252 (5th Cir. 1990); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982); *Evers v. Equifax, Inc.*, 650 F.2d 793, 796 (5th Cir. 1981). Moreover, modifying or setting aside a judgment under Rule 59 is an extraordinary remedy; motions for new trial or to alter or amend a judgment should not be avenues for relitigating old matters, raising new

arguments, or submitting evidence that could have been presented before. *See Theriot v. Parish of Jefferson*, 66 F. Supp. 1435, 1452 (E.D. La. 1997); *Campbell v. St. Tammany Parish School Board*, No. 98-2605, 1999 WL 777720, at *1 (E.D. La. Sept. 29, 1999). "It is well settled that a jury's damages award should not be disturbed unless it is 'entirely disproportionate to the injury sustained.'" *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1426 (5th Cir. 1988) (quoting *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983)). Further, "pain and suffering is, to a large degree, not susceptible to monetary quantification, and the jury thus necessarily has especially broad leeway," but still, "[t]he sky is simply not the limit." *Id.* at 1427 (5th Cir. 1988) (internal citations and quotations omitted).

## IV. DISCUSSION

### A. Whether there was sufficient evidence to support the jury's determination that JCC was negligent

#### 1. Negligent Hiring

A party "who hires an irresponsible independent contractor may be independently negligent." *Hemphill v. State Farm Ins. Co.*, No. 84-536 (La. App. 3 Cir. 6/26/85), 472 So. 2d 320, 324 (citing *Evans v. Allstate Insurance* Company, No. 6862 (La. App. 1 Cir. 1/30/67), 194 So.2d 762, 767). At least one Louisiana appellate court has "characterize[d] the standard for negligent hiring as what the principal knew or should have known." *Dragna v. KLLM Transport Services, LLC*, 638 Fed.Appx 314, 319 (5th Cir. 2016) (citing *Certified Cleaning & Restoration, Inc. v. Lafayette Ins. Co.*, 67 So.3d 1277, 1284 (La.Ct.App.2011); *see also Guillory v. Conoco, Inc.*, 521 So.2d 1220, 1224–25 (La.Ct.App.1988) (relying on two Louisiana appellate court decisions that looked to what the principal knew or should have known at the time of hiring that a contractor was irresponsible).

In this case, there was significant testimony and evidence at trial to support a jury finding that JCC knew or should have known that AWR was irresponsible before JCC had hired AWR. For example, David Stuart testified he would have looked at the BBB website to vet AWR as an independent contractor and this website had given AWR an "F" rating. Additionally, JCC also knew AWR had an expired certificate of insurance and did not meet JCC's minimum insurance coverage requirements when JCC hired AWR as a vendor. Moreover, JCC knew at least eight days before the incident that AWR's permit to do work on the property had expired but allowed AWR to continue working on the property. Finally, JCC knew AWR was short-handed on the first day of the project when half of AWR's workers quit, but JCC allowed AWR to continue working short-handed for at least eight days before the incident occurred. The Court concludes all of this evidence is sufficient to support a jury finding in favor of Plaintiff on her negligent hiring claim against JCC. The Court thus declines to enter a judgment as a matter of law or authorize a new trial on this ground.

### 2. Operational Control

Under Louisiana law, a principal or owner of a property, such as JCC, is generally not liable for the negligent acts of an independent contractor performing work on the property that the contractor was hired to do. *Falcon v. Surcouf*, No. 17-CA-212 (La. App. 5 Cir. 12/27/17), 236 So.3d 716, 725; *see also Davis v. Dynamic Offshore Res., LLC*, 865 F.3d 235, 236 (5th Cir. 2017); *Coulter v. Texaco, Inc.*, 117 F.3d 909, 911–12 (5th Cir. 1997). This general rule, however, is subject to exceptions. A property owner or principal is liable when the principal exercises operational control over the contractor's actions, or gives express or implied authorization to unsafe practices. *Falcon*, 236 So.3d at 725; *Davis*, 865 F.3d at 236.

Operational control exists if the principal has "direct supervision over the step-by-step process of accomplishing the work." *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992); *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003). "It is not the supervision and control which is actually exercised that is significant, but it is the *right* to exercise it which is of primary concern in determining whether a principal may be held liable for the torts of an independent contractor." *Triplette v. Exxon Corp.*, 554 So. 2d 1361, 1363 (La. Ct. App. 1989) (citing *Hickman v. Southern Pacific Transport Company,* 262 La. 102, 262 So.2d 385 (1972); *Smith v. Zellerbach*, 486 So. 2d 798, 801 (La. Ct. App.)) (emphasis in original).

However, a principal who demands that an independent contractor develop safe work procedures or comply with the principal's safety rules, do not, in of themselves, constitute such operational control as to trigger liability on the part of the principal. *Voces v. Energy Res. Tech., G.O.M., L.L.C.*, 704 F. App'x 345, 350–51 (5th Cir. 2017); *see also LeJeune*, 950 F.2d at 269–70 ("The fact that a principal takes an active interest in the safety of the employees of its independent contractor does not, in and of itself, constitute direct operational control.") (quoting *Duplantis v. Shell*, 948 F.2d 187, 193 (5th Cir.1991)); *Triplette*, 554 So.2d at 1363 ("Further, even though the contract required Midwest to comply with Exxon safety standards, this requirement does not signify the requisite right of operational control sufficient to vitiate the independent contractor relationship."). It is also not enough the principal has "a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations." *LeJeune*, 950 F.2d at 270 (quoting *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989)). "There must be such a retention of right of supervision that the contractor is not entirely free to do the work his own way." *Id.* (quoting *Landry*, 889 F.2d at 1471). The Fifth Circuit has long

recognized that mere supervision alone is insufficient to constitute operational control; there is no operational control unless the principal retains control over the "methods and manner of work." *See Grammer v. Patterson Servs., Inc.*, 860 F.2d 639, 644–45 (5th Cir. 1988); *see also Iglesias v. Chevron U.S.A., Inc.*, 656 F.Supp. 2d 598, 601 (E.D. La. 2009).

In this case, the facts of the case can support a jury finding that JCC had operational control over AWR. When the AWR crew first arrived at the jobsite, they brought no equipment: no barricades, cones, warning signs, or manlift. This should have raised a "red flag" for JCC or caused some concern as to AWR's capacity to do the job in a safe and appropriate manner. David Stuart, on behalf of JCC, was on the jobsite daily, participated in safety meetings, had warning signs made and placed on the property where the project was taking place, provided AWR with a manlift and barricades, assisted in moving and placing barricades, actively directed pedestrian traffic on the sidewalks, and provided labor and assistance to AWR whenever it was needed. The Court thus concludes there was enough evidence produced at trial to support the jury finding that David Stuart, on behalf of JCC, retained control over the "methods and manner of work" for the bird removal projection so as to exercised operational control over it. The Court therefore declines to enter a judgment as a matter of law or authorize a new trial on this ground.

### 3. *Authorization of Unsafe Work Practices*

As discussed earlier, under Louisiana law, although a principal or property owner is generally not liable for the negligent acts of an independent contractor, an exception to this general rule exists when the property owner or principal gives express or implied authorization to unsafe practices. *Falcon*, 236 So.3d at 725; *Davis*, 865 F.3d at 236.

In this case, the Court concludes there was sufficient evidence introduced at trial for the jury to find that JCC expressly, or at least implicitly, authorized unsafe work practices. For

example, David Stuart, who was present at the worksite when the incident occurred, allowed an uninsured contractor to move a manlift down a public sidewalk in New Orleans without a valid permit. Moreover, Stuart, on behalf of JCC, knew that AWR was shorthanded when the manlift was being moved, knew the permit for the job did not allow for the sidewalk or street to be blocked off, and knew there were no barricades or other devices blocking pedestrians from the manlift's path. The Court thus declines to overturn the jury verdict as a matter of law or order a new trial on this ground.

### 4. *Voluntary Assumption of Duty*

"[U]nder Louisiana jurisprudence, parties who voluntarily assume certain duties for workplace safety must perform those duties in a reasonable and prudent manner." *Bujol v. Entergy Services, Inc.*, Nos. 2003-C-0492, 2003-C-0502 (La. 5/25/04), 922 So.2d 1113, 1129. "The question of whether a person has voluntarily assumed a duty is one of fact." *Saldana v. Larue Trucking,* LLC, No. 52,589-CA (La. App. 2 Cir. 2019), 268 So.3d 430, 437 (citing *Schulker v. Roberson*, 91-1228 (La. App. 3 Cir. 6/5/96), 676 So.2d 684). Louisiana courts apply Section 324A of the *Restatement (Second) of Torts* to determine liability to a third person for negligent performance of an undertaking. *Bujol*, 922 So. 2d at 1129; *Hernandez v. Dedicated TCS, L.L.C.*, No. CV 16-3621, 2017 WL 2868803, at *3 (E.D. La. July 5, 2017). "The plain language of the introductory portion of § 324A establishes that an assumption of duty arises when the defendant (1) undertakes to render services, (2) to another, (3) which the defendant should recognize as necessary for the protection of a third person." *Bujol*, 922 So. 2d at 1129. However, even if a plaintiff proves an assumption of duty by the defendant and the defendant failed to exercise reasonable care, the plaintiff can only recover if he proves that either:

(a) the defendant's failure to exercise reasonable care increased the risk of harm; or

(b) the defendant has undertaken to perform a duty owed by the employer to the injured employee; or

(c) harm is suffered because of reliance of the employer or the injured employee upon the undertaking.

*Id.*

The Court concludes there was sufficient evidence introduced at trial for a jury to find that JCC voluntary assumed a duty to supervise and ensure the work was conducted safely because JCC provided equipment and labor, assisted with safety meetings, helped to direct pedestrians on the sidewalk, prepared warning signs, and supervised the jobsite through David Stuart. The Court also concludes there was sufficient evidence for the jury to find that JCC breached its assumed duty, as JCC provided an insufficient number of barricades to protect pedestrians, failed to place the barricades around the sidewalk where pedestrians were walking, made and provided warning signs that were not placed where they could be seen and observed by pedestrians, provided insufficient labor to assist AWR in protecting pedestrians at the worksite, and did not ensure its contractor had valid permits and insurance to conduct the work at hand. However, it is unclear whether Plaintiff can meet the other requirements for recovery pursuant to § 324A. Nevertheless, because the Court has already concluded that the jury could find JCC negligent on other grounds, the Court declines to further evaluate whether sufficient evidence was introduced at trial to support Plaintiff's voluntary assumption of duty claim for recovery.

**B. Whether there was sufficient evidence to support the jury's allocation of 49 percent of the fault to JCC**

A jury's allocation of fault should comport with the apportionment factors established in

*Watson v. State Farm Fire & Casualty Insurance Company*:

(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was

sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.

469 So.2d 967, 974 (La. 1985) (citing Uniform Comparative Fault Act, § 2(b) and Comment). The Fifth Circuit has stated that it reviews a fact finder's allocation of fault under the "clearly erroneous" standard. *Transorient Navigators Co., S.A. v. M/S Southwind*, 788 F.2d 288, 291 (5th Cir. 1986). A factual finding is not clearly erroneous so long as it is "plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574 (1985).

The bar to set aside a jury verdict as a matter of law or to order a new trial is high, and rightfully so, and the Court concludes that the jury's allocation of fault can be substantiated by the evidence presented at trial. Specifically, as discussed in more detail above, there was sufficient evidence introduced at trial for a jury to find that JCC's negligence caused the accident. The video of the incident also shows that Plaintiff's own actions were not the legal cause of her injuries, as she was merely standing on a public sidewalk, waiting for the light to change to cross the street, and not doing anything she should not have been doing when she was struck from behind by the manlift, which rolled over her leg and then backed over it a second time. Moreover, the video shows there were no barricades, cones, flags, or warning signs to alter Plaintiff that the manlift was about to move and strike her. The Court therefore declines to grant JCC's motion for a judgment as a matter of law or for a new trial because the jury's allocation of fault comports with the *Watson* factors and is not clearly erroneous.

### C.  Whether the jury's award for future pain, suffering, mental anguish, disability, scarring, and disfigurement was excessive and contrary to the law and evidence

The Fifth Circuit has held numerous times that an assessment of damages is a factual finding reviewed under the clearly erroneous standard. *Hernandez v. M/V Rajaan,* 841 F.2d 582, 587 (5th Cir. 1988) (citing *Sosa v. M/V LAGO IZABAL,* 736 F.2d 1028, 1035 (5th Cir. 1984)).

"This court will not overturn a damage award unless the trier of fact abused its discretion." *Id.* (citing *Bartholomew v. CNG Producing Co.,* 832 F.2d 326, 331 (5th Cir. 1987)). "An award is excessive only if it is greater than the maximum amount the trier of fact could properly have awarded." *Moore v. M/V ANGELA*, 353 F.3d 376, 384 (5th Cir. 2003) (citing *Sosa*, 736 F.2d at 1035). "An appellate court may not determine excessiveness by comparing verdicts in similar cases, but rather must review each case on its own facts." *Id.* (citing *Winbourne v. Eastern Airlines, Inc.*, 758 F.2d 1016, 1018 (5th Cir. 1984)).

In *Puga v. RCX Sols., Inc.*, the Fifth Circuit held that it uses the "maximum recovery rule" to determine whether an award is excessive. 922 F.3d 285, 297 (5th Cir. 2019). Under the maximum recovery rule, the Fifth Circuit "will decline to reduce damages where the amount awarded is not disproportionate to at least one factually similar case from the relevant jurisdiction." *Id.* (quoting *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002). The way the Fifth Circuit measures disproportionality is by "applying a percentage enhancement to past similar awards," which is 50 percent in jury trials. *Id.* (internal citations omitted). Still, "[b]ecause the facts of each case are different, prior damages awards are not always controlling; a departure from prior awards is merited 'if unique facts are present that are not reflected within the controlling caselaw.'" *Lebron*, 279 F.3d at 326 (quoting *Douglass v. Delta Air Lines, Inc.*, 897 F.2d 1336, 1339 (5th Cir.1990)). Accordingly, when there are unique facts pertaining to the damages award "for which there are no controlling cases in the relevant jurisdiction, the maximum recovery rule is not implicated and [the Fifth Circuit] refuse[s] to substitute [its] judgment for that of the jury." *Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 739 (5th Cir. 2011) (citing *Vogler v. Blackmore*, 352 F.3d 150, 158 (5th Cir. 2003)).

In an evaluation of the jury's award for future pain, suffering, mental anguish, scarring, and disability, the Court cannot conclude that the award was excessive using the "maximum recovery rule." *See Puga*, 922 F.3d at 297. In *Naquin v. Elevating Boats, LLC*, the jury awarded future physical pain and suffering of $700,000 to a plaintiff who was injured while operating a crane at work and who was suffering from chronic pain and had not yet developed any post-traumatic arthritis, but was at a high risk of doing so. No. CIV.A. 10-4320, 2012 WL 5618503, at *13 (E.D. La. Nov. 15, 2012), *aff'd in part, vacated in part, remanded sub nom. Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927 (5th Cir. 2014). Although *Naquin*'s damages award was overturned on appeal, the reasoning that the Fifth Circuit provides for not only overturning the emotional suffering portion of the award is that it could not "discern to what extent Naquin's $1,000,000 award for emotional suffering was based upon the non-compensable harm caused by the relative's death," and therefore the entire damage award was "tainted." *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 940 (5th Cir. 2014). Moreover, the Circuit Court pointed to the fact that "most reported decisions do not distinguish between physical and emotional pain and suffering awards, so [it could not] utilize [its] usual comparative framework for evaluating the reasonableness of Naquin's *physical* damage award in isolation." *Id.* (emphasis in original).

In the present case, however, Plaintiff did not seek future emotional pain and suffering based on witnessing a relative's death—her future pain and suffering award was based solely on her own injuries and the expected pain and suffering she will experience in the future. Plaintiff sustained a fracture of her ankle requiring several operations, including ones that resulted in screws and a metal titanium plate being put in place in an attempt to stabilize her ankle joint. R. Doc. 192-6 at 50. Plaintiff is suffering from chronic pain, has already been diagnosed with post-traumatic arthritis, and her injuries will impact her functionality in her day-to-day life because she will have

"ankle instability, discomfort while walking, painful arthritis, and painful scarring." R. Doc. 249 at 21. Moreover, over the years, Plaintiff's ankle will continue to "wear down" and she will have "progressive posttraumatic arthritis of her ankle." R. Doc. 249 at 21. Dr. Zura also testified that Plaintiff will "more probably than not need future surgery to treat her worsening pain, stiffness, and arthritis around her ankle" and her pain and stiffness will be permanent and last the rest of her life, which Dr. Zura calculated to be about 52.2 years. R. Docs. 249 at 22–23, R. Doc. 192-6 at 79.

The Court does not find any of JCC's proffered cases analogous to Plaintiff's situation in this case, as they either did not involve plaintiffs who developed post-traumatic arthritis as a result of the incidents that gave rise to the lawsuits, or if they did, the decisions only discuss awards of lump sum general damages that make it difficult for the Court to ascertain what an analogous future pain and suffering award may be in this case. The Court thus does not conclude that the jury's future pain and suffering award is clearly excessive because it can be supported by the evidence in this case.

> 1. *Whether Plaintiff counsel's use of allegedly improper arguments during closing argument was prejudicial and influenced the size of the jury's award*

As a general rule, the failure to object contemporaneously to allegedly improper statements during closing argument constitutes a waiver of an objection. *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.,* 848 F.2d 613, 619–20 (5th Cir.1988); *see also In Re the Matter of BOPCO, L.P.*, No. CIV.A. 11-3137, 2014 WL 241591, at *5 (E.D. La. Jan. 22, 2014). Still, even if no objection was contemporaneously made to an improper closing argument, the Fifth Circuit has stated it "must reverse when necessary to preserve 'substantial justice.'" *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 276 (5th Cir. 1998) (internal citations omitted); *see also Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975) ("We believe the error in final argument was of such magnitude, however, particularly in the circumstances of this case, as to have seriously

prejudiced defendants' right to a fair trial, and the error must be corrected and a new trial required even in the absence of timely objection.").

The Fifth Circuit has stated it "examines the propriety of closing argument by reviewing the entire argument 'within the context of the court's rulings on objections, the jury charge, and any corrective measures applied by the trial court.'" *Nissho–Iwai Co.*, 848 F.2d at 619 (citing *Westbrook v. General Tire & Rubber Co.,* 754 F.2d 1233, 1238 (5th Cir. 1985) (per curiam). The trial court may be able to cure improprieties in a party's closing argument through jury instructions. *See PHI, Inc. v. Apical Indus., Inc.*, No. 6:13-CV-00015, 2018 WL 4215012, at *4 (W.D. La. Aug. 27, 2018) ("To begin with, it is axiomatic that the arguments of counsel are not evidence, and the jury in this case was expressly instructed that the arguments of counsel were not evidence. Juries are presumed to follow the instructions given to them by the judge presiding over the trial, and Apical presented no evidence in an effort to show that the jury did not follow instructions in this case. Therefore, Apical has not established that anything said by PHI's counsel in his closing argument was considered by the jury to be evidence and therefore crucial to the jury's decision-making process.").

In this case, JCC never objected to Plaintiff counsel's arguments "either at the time of the argument or at a sidebar conference immediately thereafter," *Nissho–Iwai Co.*, 848 F.2d at 619, so it has waived its right to object now. With respect to JCC's contention that Plaintiff counsel improperly used the Golden Rule argument in closing arguments, the Court concludes that counsel only used the argument with respect to liability, as allowed by the Fifth Circuit, and not with respect damages, which is impermissible. *See Hymel v. UNC Inc.*, 68 F.3d 467 (5th Cir. 1995) (citing *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983)) ("Our caselaw forbids the Golden Rule argument only in relation to damages."). Moreover, even if JCC had

contemporaneously objected to Plaintiff counsel's closing argument, the Court cured any impropriety in the closing argument through its jury instructions. Specifically, the Court instructed the jury that it was only to consider the evidence admitted in the case in making its decision, and that "[a]rguments made by the lawyers, including those related to the lawyers' estimates of dollar amounts to be awarded as damages, are not evidence in the case," R. Doc. 205 at 3. Therefore, the Court does not agree with JCC that a new trial should be granted to preserve "substantial justice."

## V.  CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant JCC Motion for a Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b) or, Alternatively, a New Trial under Federal Rule of Civil Procedure 59(a)(1)(A), or a Remittitur, R. Doc. 241, is hereby **DENIED**.


New Orleans, Louisiana, this 23rd day of December, 2019.


ELDON E. FALLON
U.S. DISTRICT COURT JUDGE